UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TANYA STEELE,<br>      Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HOUSING & URBAN DEVELOPMENT,<br>et al.,<br>      Defendants. | Civil No. 3:17-cv-30049-KAR |

MEMORANDUM AND ORDER ON DEFENDANTS JOHN PEDRO, JR. AND JOHN PEDRO REAL ESTATE ASSOCIATES MOTION FOR SUMMARY JUDGMENT, DEFENDANT WAY FINDERS, INC.'S (F/K/A HAP HOUSING) MOTION FOR SUMMARY JUDGMENT AGASINT PLAINTIFF, AND DEFENDANT JOHN PEDRO JR.'S MOTION TO STRIKE PLAINTIFF'S STATEMENT OF DISPUTED FACTS
(Dkt Nos. 165, 168, 192)

ROBERTSON, U.S.M.J.

     Tanya Steele ("Plaintiff") brings this action *pro se* against John Pedro, Jr. ("Pedro"),[1] and Way Finders, Inc., f/k/a HAP Housing ("Way Finders") (collectively, "Defendants"), asserting a claim for discrimination in violation of the Federal Housing Act ("FHA"), 42 U.S.C. § 3617, against both Defendants.[2] Presently before the court are Defendants' motions for summary judgment (Dkt. Nos. 165, 168) and Pedro's motion to strike Plaintiff's L.R. 56.1 statement of disputed facts (Dkt. No. 192). The parties have consented to this court's jurisdiction. *See* 28

---

[1] Plaintiff also named John Pedro Real Estate Associates as a defendant, but it was never served in this matter, and, therefore, it is not a proper party.
[2] Plaintiff also asserted claims for intentional infliction of emotional distress against Way Finders and Pedro (Dkt. No. 6 at 5), but those claims were dismissed at the Fed. R. Civ. P. 12(b)(6) stage (Dkt. Nos. 51, 81).

1

U.S.C. § 636(c); Fed. R. Civ. P. 73 (Dkt. No. 93).  For the following reasons, Pedro's motion to strike is DENIED and Defendants' motions for summary judgment are GRANTED.

I.   **MOTION TO STRIKE**

Pedro seeks to strike Plaintiff's L.R. 56.1 statement of disputed facts from the summary judgment record.  The rule requires that a summary judgment motion "include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried," with citations to the record, and that the opposition "include a concise statement of the material facts of record as to which it is contended there exists a genuine issue to be tried," also with citations to the record.  L.R. 56.1.  Pedro argues that Plaintiff's statement fails to comply with the rule because it is based on evidence that is unauthenticated and would be inadmissible at trial; consists of a recitation of immaterial and unsupported statements that lack citation to the record; and edits and mischaracterizes testimony and other evidence.

The purportedly unauthenticated documents Pedro seeks to strike consist of proof of service of process receipts signed by Deputy Sheriff Michael Powers and certifying that "on 4/13/2016 at 2:15 PM, [he] served a true and attested copy of the Request for Emergency Order Notice of Hearing on Temporary Restraining Order" as follows: "by leaving it at the last and usual place of abode of Jaime Rosa, 934 Berkshire Avenue #2 Springfield, MA  01151;" " by leaving it at the last and usual place of abode of Jaime Rivera, 934 Berkshire Avenue Springfield, MA 01151;" "by leaving it at the last and usual place of abode of Daisy Rivera, 934 Berkshire Avenue Springfield, MA 01151;" and "by delivering in hand to Jackie Martinez at 934 Berkshire Avenue #2 Springfield, MA 01151" (Dkt. No. 190 at 82-85).  Pedro relies on an outdated version of Fed. R. Civ. P. 56 to argue that subsection (c)(4) requires that certified documents be attached to supporting affidavits.  In fact, this is no longer the case.  "The

requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record." *See* Fed. R. Civ. P. 56, Advisory Committee Notes to the 2010 Amendment.  The current rule does allow "[a] party to object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56 (c)(2).  The First Circuit recently declined to pass judgment on whether this requires that a document be authenticated, *Joseph v. Lincare, Inc.*, 989 F.3d 147, 155 and n.4 (1st Cir. 2021), although in doing so the court citesd to one of its own decisions holding that a document was inadmissible at the summary judgment stage because it was unauthenticated.  *See G. v. Fay School*, 931 F.3d 1, 14 (1st Cir. 2019) (citing *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000)).  Nevertheless, the court compared its decision in *Fay* with a contrary decision from the Fifth Circuit noting that, after the 2010 amendment to Rule 56, all that must be shown is that the evidence "be capable of authentication at trial."  *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017).  Given the uncertainty of the First Circuit's position on this issue, this court will adopt the more liberal interpretation of the rule as enunciated by the Fifth Circuit in *Maurer*.  Because the court presumes that Plaintiff could authenticate these documents at trial by calling Deputy Sheriff Powers to testify, the court will consider them as part of the summary judgment record. Moreover, to the extent that the originals of these documents bear a seal purporting to be that of the Commonwealth of Massachusetts, as Plaintiff has represented, they are self-authenticating under Fed. R. Evid. 902(1).

      Pedro also seeks to strike portions of Plaintiff's statement of disputed fact that he maintains are immaterial and unsupported by citation to the record.  Regarding Pedro's claims of

immateriality, it is up to the court to decide whether a particular fact is material in ruling on the motions for summary judgment. This is not a basis for striking Plaintiff's statement. As to the statements that are purportedly unsupported by the record, the court will assure itself that any alleged factual dispute is supported by record evidence before relying on a supposedly disputed fact. To the extent that a particular disputed fact is not supported, the court will disregard it.

Finally, the court turns to Pedro's claim that Plaintiff mis-states and mis-characterizes the evidence. The court agrees with Pedro that Plaintiff misquotes his testimony from the Housing Court hearing and will rely on the transcript of the proceeding rather than Plaintiff's revision of his testimony. Regarding Plaintiff's claimed mischaracterizations of the record, the court will rely not on Plaintiff's characterizations of the record but on the record itself.

Accordingly, Pedro's motion to strike Plaintiff's L.R. 56.1 statement of disputed facts is denied.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party …,' *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018) (citation omitted), and a fact is 'material' if it 'has the potential of affecting the outcome of the case,' *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011) (citation omitted)." *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021). In evaluating whether a genuine dispute of material fact exists, a court "'look[s] to all of the record materials on file, including the pleadings, depositions, and affidavits' without evaluating 'the

4

credibility of witnesses [ ] or weigh[ing] the evidence.'" *Id*. (second and third alteration in original) (quoting *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014)).

A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325). If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor. *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)).

    B.  <u>Factual Background</u>[3]

Since 1987, Plaintiff, a Black woman, has resided with her parents at 928 Berkshire Avenue, a single-family home located in Indian Orchard and owned by Plaintiff's father (Dkt. No. 187 at ¶¶ 2, 3; Dkt. No. 189 at ¶¶ 1, 10-11). In lieu of paying rent, Plaintiff provides caretaking services for the property (Dkt. No. 187 at ¶¶ 4-5).

According to Plaintiff, she and her family have been the victims of numerous instances of severe racial harassment, which Plaintiff attributes to "the tenants" of a neighboring property,

---

[3] The facts are taken from the consolidated statements of facts (Dkt. Nos. 187, 189), and from the materials cited therein.

934 Berkshire Avenue, or gang associates of such tenants (Dkt. No. 187 at ¶¶ 6-8; Dkt. No. 189 at ¶ 2). Plaintiff details a number of those incidents in her amended complaint, which have included having human and dog feces, banana peels, dead rats, garbage, and eggs thrown onto the property between 2015 and 2017 (Dkt. No. 6). In her deposition, Plaintiff identified the individuals who have been harassing her as Jaime Rivera, Jaime Alvarado, and Jackie Martinez, along with unidentified members of Jaime Rivera's gang (Dkt. No. 187 at ¶ 11).[4] According to Plaintiff's testimony, however, the only incident identified in her amended complaint in which Jackie Martinez was involved concerned the releasing of a large pit bull on her, which Plaintiff alleges occurred on February 5, 2016 (Dkt. No. 187 at ¶ 20; Dkt. No. 6 at 3).

At all times relevant to the complaint, the property on which the two-family home at 934 Berkshire Avenue is situated was owned by WMass Residential LLC, of which Pedro is a principal (Dkt. No. 189 at ¶ 3; Dkt. No. 166-2).[5] Daisy Rivera was a tenant on the first floor at 934 Berkshire Avenue from September 30, 2010, until her death in January 2017 (Dkt. No. 189 at ¶¶ 5-6; Dkt. No. 166-3). Thereafter, commencing on May 18, 2017, Misrael Colon and Francheska Vargas rented the first-floor apartment (Dkt. No. 189 at ¶ 6; Dkt. No. 166-3). Jacqueline Martinez was a tenant on the second floor at 934 Berkshire Avenue beginning in September 2013 (Dkt No. 189 at ¶ 7; Dkt. No. 166-3). The parties dispute when Martinez ceased being a tenant. Pedro maintains that Martinez left in or about September 2015, while Plaintiff maintains she was a tenant until February 9, 2016. Plaintiff does not cite to any record evidence to support her position but the court notes that the record includes a proof of service of process

---

[4] Plaintiff has described Jaime Rivera as the "mastermind or initiator of the harassment in this case" (Dkt. No. 190 at 90).
[5] Pedro sold the property to WMass Residential LLC, in a deed recorded on April 29, 2013 (Dkt. No. 189 at ¶ 3; Dkt. No. 166-2). WMass Residential LLC, in turn, sold the property to Luis A. Mejia, in a deed recorded on August 28, 2018 (Dkt. No. 189 at ¶ 4; Dkt. No. 166-2).

indicating that Martinez was served in hand at 934 Berkshire Avenue on April 14, 2016, as well as testimony by Pedro that she moved out at the end of April 2016 (Dkt. No. 190 at 85, 111). Therefore, the court finds that there is a genuine dispute regarding when Martinez ceased her tenancy at 934 Berkshire Avenue, although, so far as appears from the record, it had ended by the last day of April 2016. Thereafter, commencing on May 15, 2018, Joanne Nyzio rented the second-floor apartment (Dkt No. 189 at ¶ 7; Dkt. No. 166-3).

Neither Jaime Rivera nor Jaime Alvarado were tenants at 934 Berkshire Avenue during the relevant time-period (Dkt. No. 187 at ¶ 12; Dkt. No. 189 at ¶¶ 8, 12, 20).[6] However, Pedro identified Jaime Rivera as his tenant Daisy Rivera's son, and stated that, although Jaime Rivera did not live with her, he would visit (Dkt. No. 190 at 113). Pedro also testified that his other tenant, Jacqueline Martinez "had her boyfriend there" (Dkt. 190 at 112). He did not identify the boyfriend, but Plaintiff has represented that it was Jaime Alvarado.

On August 11, 2016, Plaintiff filed a complaint in the Trial Court of Massachusetts Small Claims Session against Pedro for $5,000.00, alleging that on November 13, 2015, "John Pedro Jr. tenants has contaminated and damaged my property with human waste (feces) and animal feces. Tenants threw it in our yard maliciously. John Pedro refuses to clean it up" (Dkt. No. 189 at ¶ 12; Dkt. No. 166-6). The court entered a default judgment against Pedro on October 27, 2016, for single damages of $500, plus prejudgment interest (Dkt. No. 189 at ¶ 13; Dkt. No. 190 at 10). Plaintiff filed s second complaint against Pedro in the Small Claims Session on February 27, 2017, this time for $6,500.00 and alleging that on November 13, 2015, and November 18, 2016, "John Pedro Jr. tenants have vandalized my property. The vandalism was malicious" (Dkt.

---

[6] While Plaintiff purports to dispute this statement of fact, none of the evidence she cites creates a triable issue as to whether Jaime Rivera or Jaime Alvarado were tenants at 934 Berkshire Avenue.

No. 189 at ¶ 14; Dkt. No. 166-8). Judgment entered in favor of Pedro on July 24, 2017, after trial by a magistrate (Dkt. No. 189 at ¶ 15; Dkt. No. 190 at 12).

Way Finders is a non-profit organization, which, among other things, is an independent contractor for the Massachusetts Department of Housing and Community Development ("DHCD") (Dkt. No. 187 at ¶ 1). In this capacity, Way Finders subcontracts with DHCD to administer the DHCD Section 8 voucher program (Dkt. No. 187 at ¶ 1). Way Finders is neither the owner nor the landlord of the property at 934 Berkshire Avenue (Dkt. No. 187 at ¶ 16). Moreover, Way Finders has never provided Section 8 vouchers to any of the individuals Plaintiff has identified as harassing her, nor are any of the alleged harassers household members of any Section 8 program participants (Dkt. No. 187 at ¶ 16-17).[7]

    C. <u>Discussion</u>

        1. *Standing*

Way Finders makes an argument that Plaintiff lacks standing to bring her FHA claim against it. Standing is a threshold jurisdictional issue that must be resolved before examining the merits of the underlying claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). "To satisfy the Constitution's restriction of ... jurisdiction to 'Cases' and 'Controversies,' Art. III, § 2, a plaintiff must demonstrate constitutional standing." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017). To establish constitutional standing, "the plaintiff must show an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and

---

[7] Plaintiff purports to contest the fact that Way Finders did not provide Section 8 vouchers to Jaime Rivera, Jaime Alvarado, or Jackie Martinez, and the fact that none of them were household members of any Section 8 program participants. However, none of the evidence Plaintiff cites creates a triable issue as to these facts.

'that is likely to be redressed by a favorable judicial decision.'" *Id*. (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Way Finders' argument is that there is no link between Plaintiff's alleged injuries and Way Finders' conduct because Way Finders does not provide Section 8 subsidies for any of the individuals Plaintiff identifies as having harassed her, and none of those individuals were household members of a Way Finders subsidy recipient. Way Finders' argument thus relates to the "'traceability' or causation element [which] 'requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm.'" *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020), *cert. denied sub nom. Dantzler, Inc. v. S2 Servs. P.R., LLC*, No. 20-1061, 2021 WL 1951807 (2021) (quoting *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)). *See also Brito v. Garland*, 22 F.4th 240, 253 (1st Cir. 2021) (quoting *California v. Texas*, 141 S. Ct. 2104, 2114 (2021) ("Traceability ensures that a plaintiff's injury is 'causally connected' to the '"allegedly unlawful conduct" of which the plaintiff[ ] complain[s].'")).

Way Finders cites only one case in support of its standing argument and does so only to identify the general requirements for standing. *See* Dkt. No. 169 at 16 (citing *Furtick v. Medford Hous. Auth.*, 963 F. Supp. 64, 67-68 (D. Mass. 1997)). It cites no authority regarding traceability. Given this dearth of authority, combined with the fact that Plaintiff has alleged that she suffered damages resulting from harassment by individuals whose rent was subsidized by Section 8 vouchers administered by Way Finders, the court finds that the traceability requirement does not defeat Plaintiff's claim, at least in theory. The issue, rather than being one of standing, is of failure of proof.

9

2. *Res Judicata*

Pedro argues that Plaintiff's FHA claim against him is barred by res judicata. Federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982). "Massachusetts recognizes two kinds of res judicata, claim preclusion and issue preclusion." *In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 56 (1st Cir. 2007) (citing *Kobrin v. Bd. of Registration in Med.*, 832 N.E.2d 628, 634 (Mass. 2005)). Pedro's argument sounds in claim preclusion, which "makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action."[8] *Kobrin*, 832 N.E.2d at 634 (quoting *O'Neill v. City Manager of Cambridge*, 700 N.E.2d 530, 532 (Mass. 1998)). "Application of the doctrine to preclude a subsequent claim requires that the moving party satisfy three elements: 1) identity or privity of the parties to the present and prior actions, 2) identity of the causes of action and 3) a prior final judgment on the merits." *Emigrant Mortg. Co., Inc. v. Bourke*, Civil Action No. 21-11133-NMG, 2022 WL 3566832, at *4 (D. Mass. Aug. 18, 2022) (citing *Kobrin*, 832 N.E.2d at 634).

Pedro contends that all three elements are met with respect to both of Plaintiff's small claims actions. Pedro is correct. As to the first element, the plaintiff and defendant are identical in the present action and in the two small claims actions. This is not in dispute.

---

[8] In a single sentence, Pedro asks this court to apply issue preclusion if it determines that claim preclusion does not apply, making no effort to establish that the elements of issue preclusion are met here. Arguments raised in a perfunctory manner such as this are deemed waived. *See Duggan v. Martorello*, No. Civil Action No. 18-12277-JGD, 2022 WL 952187, at *6 n.7 (D. Mass. Mar. 30, 2022) (quoting *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 60 n.17 (1st Cir. 1999)).

Regarding the second element – identity of causes of action – "Massachusetts deems causes of action identical for claim preclusion purposes if they 'grow[ ] out of the same transaction, act, or agreement, and seek[ ] redress for the same wrong.'" *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 52 (1st Cir. 2008) (alterations in original) (quoting *Brunson v. Wall*, 541 N.E.2d 338, 341 n. 9 (Mass. 1989)).  Discrete theories of liability may constitute identical causes of action for claim preclusion purposes if they are based on the same nucleus of operative facts." *Id.* (citing *Fassas v. First Bank & Trust Co.*, 233 N.E.2d 924, 925 (Mass. 1968)).  "Plaintiffs are 'not entitled to pursue their claim[s] ... through piecemeal litigation, offering one legal theory to the court while holding others in reserve for future litigation should the first theory prove unsuccessful.'" *Laramie v. Philip Morris USA Inc.*, 173 N.E.3d 731, 745 (Mass. 2021) (quoting *Bagley v. Moxley*, 555 N.E.2d 229, 232 (Mass. 1990)). Thus, while Plaintiff's current theory of liability against Pedro is for discrimination in violation of the FHA, it is based on the same nucleus of operative facts as her small claims proceedings. In fact, Steele does not dispute that both small claims matters arose from the same acts as described in her amended complaint in this matter, and she testified that she brought this action because she was not satisfied with what the Massachusetts District Court gave her (Dkt. No. 187 at ¶ 10, Dkt. No. 189 at ¶¶ 12, 14).  Under these circumstances, the element of identity of causes of action is met.

The court turns to the final element, that of finality on the merits.  Both the default judgment entered in favor of Plaintiff in the first action and the judgment in favor of Pedro in the second action satisfy this element.  "The Supreme Judicial Court has unequivocally held that even a default judgment is entitled to finality." *In re Brennan*, 275 B.R. 172, 176 (Bankr. D. Mass. 2002) (citing *MacEachern v. S.S. White Dental Mfg. Co.*, 23 N.E.2d 1020, 1021 (Mass.

1939)).  *See also United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004) (A "judgment by default is a 'final disposition of the case and an appealable order' that has the same effect as a judgment rendered after a trial on the merits."); *In re Giacchetti*, 584 B.R. 441, 446 (Bankr. D. Mass. 2018) ("When a judgment, even one entered by default, becomes final, it satisfies the third element of the claims preclusion test.").  Moreover, even if the default judgment were insufficient for purposes of claim preclusion, which it is not, there remains the judgment in the second action in favor of Pedro, which entered after a trial on the merits.

Plaintiff argues that her claims are not precluded because they involve acts of harassment that occurred after she filed her small claims actions.  The record does not bear out this contention.  Plaintiff filed her first small claims action on August 11, 2016, and the second on February 27, 2017.  Jacqueline Martinez's tenancy ended at the latest in April 2016, and Daisy Rivera's in January 2017.  The last possible act of harassment for which Pedro could be liable as a landlord would be in January 2017, and Plaintiff's second small claims action was not filed until the following month.  Thus, all occurrences for which Pedro could arguably bear any responsibility had happened by the time Plaintiff filed her second small claims action.  To the extent that the harassers have continued to harass Plaintiff as she alleges, Plaintiff would have no claim against Pedro for that harassment because he no longer had tenants potentially subject to his control with whom the alleged harassers had a relationship.

In summary, all three elements of claim preclusion are met here, and both of Plaintiff's claims against Pedro are subject to dismissal pursuant to the doctrine of res judicata.

3.   *Discrimination in Violation of the FHA*

Pursuant to 42 U.S.C. s. 3617, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of … any right granted or protected under

sections 3603, 3604, 3605, or 3606 of this title." Section 3604, in turn, provides that "it shall be unlawful … (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling … because of race, color, religion, sex, familial status, or national origin."

Plaintiff clarifies in her oppositions to Defendants' motions for summary judgment that her claim is a post-acquisition claim. Section 3604 "does not expressly extend[ ] the scope of the FHA to post-acquisition conduct and the First Circuit Court of Appeals … has yet to decide the issue." *Paulsen v. Great Bridge Attleboro Ltd. P'ship*, No. Civil Action No. 21-10121-NMG, 2021 WL 3475725 (D. Mass. Aug. 5, 2021). However, "[t]he majority, if not all, of the circuit courts interpreting 42 U.S.C. §§ 3604 … have refused to limit the scope of [the] provision[ ] to discriminatory conduct occurring before or at the time of signing a rental agreement. *Id*. (citing *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 87–89 (2d Cir. 2021) (en banc) (Lohier, C.J., concurring) (noting that there is apparently no circuit split: § 3604 reaches post-acquisition conduct) (collecting cases); *see also Webb v. United States Veterans Initiative*, 993 F.3d 970, 973 (D.C. Cir. 2021) ("As our sister circuits have held, nothing in section 3604 limits its scope to discriminatory conduct occurring before or at the time of signing a lease."); *Revock v. Cowpet Bay W. Condo. Ass'n,* 853 F.3d 96, 112 (3d Cir. 2017) ("A[n FHA] claim may arise before or, as here, after a plaintiff acquires housing"); *Wetzel v. Glen St. Andrew Living Cmty., LLC,* 901 F.3d 856, 861 (7th Cir. 2018) ("[T]he protections afforded by the Fair Housing Act do not evaporate once a person takes possession of her house, condominium, or apartment."). This court assumes without deciding that the FHA applies to post-acquisition discrimination.

"The Court is aware that a circuit split is developing on when a landlord can be held liable to a tenant for a hostile environment created by other tenants." *Ngiendo v. Univ. Partners,*

13

*LLC*, No. 2:20-cv-02393-HLT-TJJ, 2021 WL 5038780, at *7 n.8 (D. Kan. Oct. 27, 2021), *motion to certify appeal denied*, No. 2:20-cv-02393-HLT-TJJ, 2021 WL 7083363 (D. Kan. Nov. 10, 2021) (*comparing Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2d Cir. 2021) (en banc) (holding that a plaintiff generally fails to state a claim under the FHA for intentional discrimination when the landlord fails to respond to reports of race-based harassment by a fellow tenant), *with Wetzel v. Glen St. Andrew Living Cmty.*, LLC, 901 F.3d 856 (7th Cir. 2018) (holding that a landlord is liable under the FHA when it has actual notice of tenant-on-tenant harassment based on a protected status)). The First Circuit has not addressed the issue.

The problem for Plaintiff is that even if this court were to come down on the side of the Seventh Circuit and hold that a landlord is liable under the FHA when it has actual notice of tenant-on-tenant harassment based on a protected status, Way Finders is not the landlord of any of the alleged harassers. The holding in *Wetzel* was premised on the notion that "[l]iability attaches because a party has 'an arsenal of incentives and sanctions … that can be applied to effect conduct' but fails to use them." *Id.*, 901 F.3d at 865 (*Dunn v. Washington Cnty. Hosp.*, 429 F.3d 689, 691 (7th Cir. 2005). The landlord in *Wetzel* had the ability, for example, to evict any tenant who engaged in any activity that it determined unreasonably interfered with the peaceful use and enjoyment of other tenants. Here, there is nothing in the record to support a finding that Way Finders had any control over any of the alleged harassers, who were neither holders of Section 8 vouchers administered by Way Finders, nor family members thereof. Thus, Way Finders could not, as Plaintiff posits, have cancelled any of the harassers' Section 8 voucher subsidies. Simply put, there is no evidence that Way Finders had any relationship to the alleged harassers, legal or otherwise, that would have allowed it to exercise any control over their behavior. For this reason, as a matter of law, Way Finders cannot be liable to Plaintiff. Given

this inexorable conclusion, the court does not need to, and does not, reach Way Finders' other arguments in favor of summary judgment.

### D.  CONCLUSION

For the above-stated reasons, Pedro's motion to strike Plaintiff's statement of disputed facts (Dkt. No. 192) is DENIED, Pedro's motion for summary judgment (Dkt. No. 165) is GRANTED, and Way Finders' motion for summary judgment (Dkt. No. 168) is GRANTED. The Clerk's Office is directed to enter judgment in favor of Defendants and close this case on the court's docket.

It is so ordered.

Dated: September 7, 2022              /s/ Katherine A. Robertson
                                                      KATHERINE A. ROBERTSON
                                                      United States Magistrate Judge